# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID KISSINGER, et al., | ) | CASE NO. 4:22-CV-00709 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | |
| MAHONING COUNTY REPUBLICAN PARTY, et al., | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendants. | ) | **ORDER** |

Although in its procedural infancy, the contentiousness of the dispute in this case is plain: before the Court is (1) Defendant David Johnson's Motion to Dismiss for Lack of Jurisdiction (ECF No. 18); (2) Defendants Mahoning County Republican Party ("MCRP") and Thomas McCabe's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 21); (3) Defendant Robert Aurandt's Motion to Dismiss (ECF NO. 22); (4) Johnson's Motion for Sanctions made under Fed. R. Civ. P. 11 (ECF No. 24); (5) Plaintiffs' Cross-Motion for Sanctions against all Defendants (ECF No. 29); (6) Johnson's Motion to Strike Portions of Plaintiffs' Response to Johnson's Motion for Sanctions (ECF No. 31); and (7) Plaintiffs' Motion for Leave to Amend Complaint (ECF No. 36).

For the reasons stated in this Memorandum Opinion and Order, Defendants' Motions to Dismiss made under Rule 12(b)(1) are **GRANTED**; Defendants' Motions to Dismiss made under Rule 12(b)(6) are **DENIED AS MOOT**; Plaintiffs' Motion for Leave to Amend Complaint is **DENIED** on futility grounds; Johnson's Motion for Sanctions is **DENIED**; Johnson's Motion to Strike is **GRANTED**; and Plaintiffs' Cross-Motion for Sanctions is **STRICKEN**.

1

I. **FACTUAL BACKGROUND**

A. **The Incident at MCRP Headquarters**

Plaintiffs allege that they went to MCRP Headquarters on April 27, 2022, to deliver political campaign signs supporting political candidates whom Former President Donald Trump had not endorsed. (ECF No. 1, Compl., PageID# 4). Senator J.D. Vance, who had at that time been campaigning for the position he now holds and had received the Former President's endorsement, was at the MCRP Headquarters that day for a scheduled speech. (*Id.* at PageID# 4–5; ECF No. 36-1, Proposed Am. Compl., PageID# 193). Plaintiffs protested the speech from outside the building, and Plaintiff David Kissinger held a sign that stated, "VANCE IS A FRAUD / TRUMP IS SELLING US OUT TO PETER THIEL," apparently offending the attendees inside. (*Id.*). Plaintiff alleges that Aurandt "led a physical assault on Mr. Kissinger" by taking his sign and throwing Mr. Kissinger to the ground. (*Id.*). The Proposed Amended Complaint explains that proposed new-party defendants, Dennis Zimmet and Brian Devine, also participated in the assault on Mr. Kissinger, and that all three men threatened the protestors, claiming they would to "kick their asses." (ECF No. 36-1, PageID# 188, 194). Plaintiffs claim that they were business invitees expressing purely political speech, and that their removal from Senator Vance's speech violated their First Amendment rights. (ECF No. 1, PageID# 5, 7). (These events are collectively referred to as the "Incident").

While the Incident precipitated the instant lawsuit, the parties' contretemps did not begin or end there. The Proposed Amended Complaint alleges that the parties had been at odds in early 2021 over a vote by the members of the Columbiana County Board of Elections (for which Johnson serves as Chairman); the vote regarded the purchase of new voting machines. (ECF No. 36-1, PageID# 191). Mr. Kissinger and Johnson exchanged heated words over the vote, and Plaintiffs

collected over 600 signatures opposing the new machines. (*Id.*). In September of 2021, Plaintiffs protested a fundraising event for Governor Mike DeWine at the Columbiana County Republican Party ("CCRP") headquarters, during which Johnson shouted to Plaintiffs that they are "RINOs" ("Republican In Name Only"); Johnson's brother also threatened protestors and shouted obscenities until police asked him to leave. (*Id.* at PageID# 192).

On April 10, 2022, Plaintiffs and Johnson were again at loggerheads. This time it was about Johnson's alleged involvement in a scandal involving money that was missing from the Ohio GOP. (*Id.*). Plaintiff Cheryl Kissinger alleges that an editorial letter she drafted and sent to three Columbiana County newspapers entitled "Audit Lies" was not immediately published because it referred to Johnson as a liar, a term to which the editor objected. (*Id.*). The letter was eventually published on April 28, 2022 (one day after the Incident), with a new title, "Local Business Owner-Citizen Offers Opinion."[1] On May 2, 2022, Johnson published a letter to the editor of the Morning Journal, purportedly containing false, offensive, and derogatory statements about Plaintiffs. (ECF No. 1, PageID# 10). Johnson also posted derogatory comments about Plaintiffs on the Columbiana County Republican Party's Facebook page on the same day. (*Id.*). Johnson allegedly called Ms. Kissinger "a liar, a lunatic, a 'nut job,' an anarchist, ANTIFA, etc." (ECF No. 36-1, PageID# 192). At another point over the last year, Plaintiffs claim that they placed a four-foot sign in front of their business that read, "Don't forget to vote for Rick Barron," an apparent political adversary of Johnson. (*Id.* at PageID# 193). A known Johnson associate and CCRP volunteer came to Plaintiffs' business and shouted at them for supporting Barron. (*Id.*).

---

[1] The Proposed Amended Complaint suggests that the editor sent a copy of Ms. Kissinger's letter to Johnson prior to its publication, and made changes to the title because of sympathies for Johnson.

### B. The Complaint and Proposed Amended Complaint

The tension between Plaintiffs and Johnson culminated in Plaintiffs' filing of their seven-count Complaint against Defendants on May 2, 2022—the same day that Johnson's editorial was published. (ECF No. 1). The Complaint bases federal court jurisdiction on 28 U.S.C. § 1343 (civil rights) and 28 U.S.C. § 1367 (supplemental jurisdiction). (ECF No. 1, PageID# 6; ECF No. 36-1, PageID# 189–90). Specifically, Plaintiffs seek to invoke this Court's subject matter jurisdiction in Count One of the Proposed Amended Complaint, which asserts that all Defendants conspired to violate Plaintiffs' First Amendment rights in violation of 42 U.S.C. § 1983.[2] The Proposed Amended Complaint alleges that the current Defendants are all state actors, and thus properly subject to a § 1983 claim, based on the following facts:

- MCRP is a subsidiary of the Republican National Committee ("RNC") and recipient of Federal Elections Commission funding. (ECF No. 36-1, PageID# 185, ¶ 7).

- McCabe is an agent and/or employee of MCRP, and Director of the Mahoning County Board of Elections. (*Id.* at PageID# 185–86, ¶ 9).

- Aurandt is an agent and/or employee of MCRP, a member of the Mahoning County Board of Elections with one of four votes in matters relating to McCabe's employment and compensation. (*Id.* at PageID# 186, ¶ 10).

- Johnson serves on the Columbiana County Board of Elections as its Republican Chairman (*id.* at ¶ 11), and he is an agent and/or employee acting on behalf of the Columbiana County Republican Party, Mahoning County Republican Party, and Ohio Republican Party (*id.* at ¶ 12); the Treasurer of the Ohio Republican Party (*id.*

---

[2] The original Complaint also included a § 1983 claim, but it was asserted only against McCabe and MCRP.

at ¶ 13); and the State Central Committeeman for the Republican Party in the 33rd State Senate District, which includes Columbiana and Mahoning Counties (*id.* at PageID# 186–87, ¶¶ 14–15).

- John Doe 3 is an agent and or employee of MCRP. (*Id.* at PageID# 187, ¶ 20).

The Proposed Amended Complaint seeks to add two additional defendants, Dennis Zimmet and Brian Devine, to replace John Does 1 and 2 named in the original Complaint, respectively. Plaintiffs allege that Zimmet and Devine are both agents and/or employees of the MCRP and/or the Ohio Republican Party. Beyond Plaintiffs' § 1983 claim against all of the existing and additional Defendants, Plaintiffs assert state-law claims for Battery, Assault, Negligence, Loss of Consortium, Defamation, False Light, and Civil Conspiracy. (ECF No. 36-1, PageID# 195–200). (Zimmet and Devine, together with Johnson, McCabe, and Aurandt, are referred to as the "Individual Defendants").

### C. The Pending Motions

#### 1. Motions to Dismiss

Johnson, McCabe, MCRP, and Aurandt all filed Motions to Dismiss the Complaint, primarily focused on whether this Court has subject matter jurisdiction to hear this case. (*See* ECF Nos. 18, 21, & 22). Defendants argue that none of the defendants are state actors against whom a § 1983 claim may lie, and therefore there is no valid federal question to support this Court's jurisdiction. (ECF No. 18, PageID# 72–75; ECF No. 21, PageID# 84–86; ECF No. 22, PageID# 97–98). Plaintiffs respond that the defendants are state actors for the reasons explained in the Proposed Amended Complaint. (*See* ECF No. 35, PageID# 167, 171). Plaintiffs suggest that Defendants had two distinct goals on the day of Senator Vance's speech: "to one end acting out

5

their individual political aims but for a second end, doing so with their offices in mind and with the ends they could achieve by way of those positions likewise in mind." (*Id.*).

### 2. *Motion for Sanctions and Motion to Strike*

Johnson filed a Motion for Sanctions, in which he asserts that Plaintiffs' Complaint violates Fed. R. Civ. P. 11 because it is not supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law. (ECF No. 24). Johnson claims that the allegations in Plaintiffs' Complaint are nothing more than political grandstanding; he asserts Plaintiffs know that their claims are based on private, not state, action, and that the law does not support federal court jurisdiction nor a valid § 1983 claim. (*Id.*).

Plaintiffs opposed Johnson's Motion on August 7, 2022, and moved for Cross-Sanctions, claiming that Johnson's Motion for Sanctions is itself sanctionable because it was filed solely to gain leverage in this case. (ECF No. 29, PageID# 151). Plaintiffs also oppose Johnson's Motion for Sanctions within their response to the defendants' Motions to Dismiss, arguing that this case presents an opportunity for this Court to expand existing law relating civil liability for political parties. (ECF No. 35, PageID# 165). Johnson moved to strike Plaintiffs' Cross-Motion for Sanctions, asserting that Plaintiffs failed to serve him with their Cross-Motion as required by Rule 11(c)(2). (ECF No. 31, PageID# 157–58). Plaintiffs did not oppose Johnson's Motion to Strike.

### 3. *Motion for Leave to Amend Complaint*

Finally, Plaintiffs have moved to amend their Complaint. (ECF No. 36). The Proposed Amended Complaint substitutes Dennis Zimmet for John Doe 1 and Brian Devine for John Doe 2. (*Id.* at PageID# 179–80). Substantively, the Proposed Amended Complaint seeks to expand their § 1983 claim to all defendants under a theory that they were all conspiring with one another to violate Plaintiffs' civil rights. (*Id.* at PageID# 181). It also explains that Defendants hold various

6

state-government offices, which clarifies Plaintiffs' allegations of state action supporting their § 1983 claim. (*Id.*). Johnson opposes Plaintiffs' Motion for Leave on futility grounds, claiming that the Proposed Amended Complaint does not cure the jurisdictional defect within the original Complaint. (ECF No. 39, PageID# 217).

## II.     MOTION STANDARDS

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

Defendants each filed a Motion to Dismiss this case under Rule 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (ECF Nos. 18, 21 & 22). The Court must first determine whether it has subject matter jurisdiction under Rule 12(b)(1), since a lack of subject matter jurisdiction renders Defendants' Rule 12(b)(6) motions moot. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Title 28 U.S.C. § 1331 provides for what is commonly referred to as federal question jurisdiction: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Determining whether a district court has federal question jurisdiction requires the Court to look beyond the plaintiff's characterization of his claim and "see whether the alleged claim actually 'arises under' the Constitution or federal statutes and is not made solely for the purpose of obtaining jurisdiction." *Bush v. State Indus., Inc.*, 599 F.2d 780, 784 (6th Cir. 1979).

When a defendant challenges subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir*, 895 F.2d at 269 (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). A facial attack like that which Defendants assert "challenges the sufficiency of the pleading, and the court takes the allegations in the

complaint as true and construes them in the light most favorable to the plaintiff." *Cox v. Bd. of Cnty. Comm'rs of Franklin Cnty.*, 436 F. Supp. 3d 1070, 1077 (S.D. Ohio 2020) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (6th Cir. 1994).

### B. Motion for Leave to Amend Complaint

Pleading amendments are governed by Fed. R. Civ. P. 15. Rule 15(a)(2), which provides that, in instances of amendment other than amending within 21 days of service of the initial complaint, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires." Plaintiffs' Complaint was filed on May 2, 2022. (EFC No. 1). Plaintiffs filed their Motion for Leave to Amend Complaint on September 13, 2022. (EFC No. 36). The 21 days allowed to amend without leave had expired, meaning that Fed. R. Civ. P. 15(a)(2) applies. Johnson opposes the proposed amendment. (EFC No. 39).

The Supreme Court, in *Foman v. Davis*, 371 U.S. 178, 182 (1962), held that courts may not deny an amendment request without explaining its reasoning for doing so, and clarified the grounds that could justify denial of such a request:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires" . . . . In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of the amendment*, etc.—the leave should, as the rule requires, be "freely given." . . . outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion.

(Emphasis added).

Whether a proposed amendment is "futile" is governed by the standard applicable to a motion to dismiss. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)). The Sixth Circuit recognizes that "a proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000); *see Pyskaty v. Wide World of Cars, LLC,* 856 F.3d 216, 224–25 (2d Cir. 2017) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or fail to state a claim under Rule 12(b)(6)."); *Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason.").

### III. DISCUSSION

#### A. The State Action Doctrine

The question central to nearly every motion before the Court is whether the Complaint (or Proposed Amended Complaint) establishes a federal question that invokes this Court's subject-matter jurisdiction. Plaintiffs' only federal claim, made under § 1983, requires that the defendants were state actors acting under color of state law when they allegedly conspired to deprive Plaintiffs of their constitutional right to engage in free speech and political protest. 42 U.S.C. § 1983; *see Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (holding that § 1983 liability cannot attach to "merely private conduct, no matter how discriminatory or wrongful").

A § 1983 claim requires (1) "the deprivation of a right secured by the Constitution or laws of the United States" and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48

9

F.3d 192, 194 (6th Cir. 1995). The absence of either element means that the § 1983 claim has not been pleaded. *Lausin v. Bishko*, 727 F. Supp. 2d 610, 625 (N.D. Ohio 2010). Whether a party is a state actor is a question of law. *Blum v. Yaretsky*, 457 U.S. 991, 996–98 (1982).

State action occurs when a defendant exercised power "possessed by virtue of state law ***and made possible only because*** the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (emphasis added). *See Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997) (finding that police officer who used his position to gain access to victim's home to rape her was not a state actor because the break-in and rape were not accomplished nor made possible solely because of the police officer's state employment). The Court must therefore determine whether Defendants impinged Plaintiffs' civil rights via the powers they possess by virtue of their respective offices, or as mere private individuals. *Monroe v. Pape*, 365 U.S. 167, 183–84 (1961), overruled on other grounds by *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) (discussing *United States v. Classic*, 313 U.S. 299, 325–26 (1941), which held that election officials obligated to count ballots by statute could be held liable under a statute, which criminalized the deprivation of constitutional rights by a person acting under color of any law, when they allegedly failed to count all ballots cast).

Private conduct becomes state action under § 1983 when the conduct is "fairly attributable to the state." *Luger v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982). Federal courts use several tests for determining whether a defendant should be a state actor for the purpose of a § 1983 claim: the public function, state compulsion, and nexus tests are three of the most common. *Wolosky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). The state official test, which is derivative of the nexus test, is also useful when a private party holds a state office. *Lindke v. Freed*, 37 F.4th 1199, 1202–

10

03 (6th Cir. 2022). Relevant here,³ the public function tests provides that private conduct is deemed state action when a person "exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). The doctrine is interpreted narrowly, with only functions like holding elections, exercising eminent domain, and operating a company-owned town falling within its scope. *Id.* at 833–34 (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 157–58 (1978); *Jackson v. Metro. Edison Co.*, 417 U.S. 345, 352–53 (1974); *Marsh v. Alabama*, 326 U.S. 501, 505–09 (1946)).

Also relevant is the nexus test, under which a private party may be a state actor if her actions are either subject to the government's "management or control" or "entwined with governmental policies." *Lindke*, 37 F.4th at 1203 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Since § 1983 cannot apply to private individuals engaged in purely private conduct, the nexus test asks whether a sufficiently close nexus exists "between the state and the *challenged action*." *Blackwell v. Allen*, No. 22-1300, 2022 WL 17832191, at *4 (6th Cir. Dec. 21, 2022) (citing *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007)) (emphasis in original). This is because "not every action undertaken by a person who happens to be a state actor is attributable to the state." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). To be a state actor, a public official's relevant conduct must have occurred "in the course of performing an actual or apparent duty of his office . . . unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters*, 242 F.3d at 359 (citing *West*, 487 U.S. at 49–50).

In *Blackwell*, for example, an attorney acting as a city's law director as part of his overall private law practice was alleged to have used his position to deny Freedom of Information Act

---

³ The Court will not analyze Defendants' conduct under the state compulsion test since none of the parties have argued for its application and it is inapposite to the allegations in the Complaint.

11

("FOIA") requests from a concerned citizen inquiring as to the contract between the city and the attorney's law firm. *Id.* at *1. The citizen responded to the denial by sending a self-generated internet meme of the attorney and his law partner wearing women's clothing, and the attorney responded to the citizen with personal attacks targeting the citizen's character and physical disability. *Id.* The Sixth Circuit found that, although the attorney held an official position with the city and used the same email address to issue the personal attacks that he used to transmit the FOIA request denials, the personal-attack emails were private conduct not suitable for a § 1983 claim. *Id.* at *5. This was because there were no allegations in the complaint that the city supervised or approved the emails or that they were somehow entwined with a governmental policy; rather, the attorney sent the emails from his personal law-firm email address, mostly outside business hours, and without any apparent connection to his role as the city's law director. *Id.*

### B. MCRP is Not a State Actor

Plaintiffs allege that MCRP is a state actor because it is "a subsidiary of the Republican National Committee ("RNC"), [and] a recipient of Federal Elections Commission ("FEC") funding." (ECF No. 36–1, PageID# 185). MCRP's Motion to Dismiss argues that the law does not transform political parties into state actors unless they are required to follow a legislative directive pertaining to the election process. (ECF No. 21, PageID# 85). Since MCRP was not engaged in conduct directed by the RNC or State of Ohio, MCRP argues that it cannot be a state actor for § 1983 purposes. (*Id.* at PageID# 186).

Indeed, the times in which a political party may be considered a state actor are few and far between. In *Smith v. Allwright*, 321 U.S. 649, 659–64 (1944), the Supreme Court determined that the Texas Democratic Party (a private organization) was a state actor because the state's legislature

12

directed the Party to decide the primary election participants, thus limiting the choice of the general-voting electorate. In *Terry v. Adams*, 345 U.S. 461, 469–70 (1953), the Court held in a plurality decision that a private democratic club, the "Jaybird Association," was also a state actor because its primary had "become an integral part, indeed the only effective part, of the elective process that determine[d] who shall rule and govern in the county."

On the other side of the coin, the Sixth Circuit has clarified that "[t]he primary election cases do not hold that a political party is part of the state, or that any action by a political party other than conducting an election is state action." *Banchy v. Republican Party of Hamilton Cnty.*, 898 F.2d 1192, 1196 (6th Cir. 1990) (quoting *California Republican Party v. Mercier*, 652 F. Supp. 928, 934 (C.D. Cal. 1986)). Instead, the political parties in those cases "were state actors[] acting under color of state law insofar as they had been assigned an 'integral part' in the election process, a governmental function." *Id.* That principle directed the result in *Banchy*, in which the Sixth Circuit found that the Ohio Republican Party was a private actor when it did not permit its newly-elected precinct executives to participate in the election of their respective ward chairmen. (*Id.*). The same principle applied in *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 296 (6th Cir. 2016), where the Ohio Republican Party was *not* a state actor when it used the process dictated by statute to file protests against nomination petitions filed by the Ohio Libertarian Party; since "any private citizen with standing is authorized by Ohio law to file a protest against a candidate's nominating petition," the Ohio Republican Party's protests were not fairly attributable to the state, and thus were private conduct.

Applying the same principle here, MCRP is not a state actor for the purpose of Plaintiffs' § 1983 claim. MCRP permitted then-senatorial-candidate Vance to use its private headquarters to speak to supporters. (ECF No. 36-1, PageID# 188, ¶ 26; PageID# 193, ¶ 44). Providing a forum

13

for a political candidate to speak is not analogous to participating in the election process. Like the Ohio Republican Party in both *Banchy* and *Libertarian Party of Ohio*, MCRP was not assigned an "integral part in the election process" when it permitted candidate Vance to speak. Private individuals and organizations alike routinely invite political candidates to speak on private property to support fundraising and voter outreach efforts. Since neither the Complaint nor the Proposed Amended Complaint includes allegations that MCRP engaged in the type of activity that is typically considered state action, Plaintiffs' § 1983 claim is not pleaded against MCRP. *See Lausin v. Bishko*, 727 F. Supp. 2d 610, 625 (N.D. Ohio 2010) (explaining that an absence of state action on the part of a defendant means that "a § 1983 claim has not been pleaded" against them).

### C. The Individual Defendants Are Not State Actors For The Purpose of This Case

The same result must be reached with respect to Johnson, McCabe, Aurandt, and the John Does, Zimmet and Devine. Under the state official derivative of the nexus test, these Defendants (and proposed defendants) can only be state actors if their actions in relation to Plaintiffs were occasioned in some way by the positions that Plaintiffs allege they hold.

#### 1. *McCabe, Aurandt, Zimmet, and Devine*

McCabe, the chairman of the MCRP and Director of the Mahoning County Board of Elections (ECF No. 36-1, PageID# 185, ¶ 9), is generally alleged to have conspired with the other defendants to deprive Plaintiffs of their constitutional rights prior to and during the Incident. This Court has already determined that MCRP is not a state actor under the circumstances alleged. Therefore, McCabe's position as Chairman and the other Individual Defendants' alleged associations with the MCRP are irrelevant to this inquiry. Aurandt, who purportedly attacked Mr. Kissinger with Zimmet and Devine, serves with McCabe on the Mahoning County Board of Elections.

Whether any Individual Defendants hold positions on county boards of election is similarly irrelevant. Like the city attorney in *Blackwell*, whose derogatory and offensive emails were not the product of his position, neither the Complaint nor the Proposed Amended Complaint allege facts supporting the claim that the Individual Defendants' attendance at candidate Vance's speech was related to their state positions. The Proposed Amended Complaint describes candidate Vance's speech as a private gathering on private property, meaning that all one needed to gain access was an invitation. (*See* ECF No. 36-1, PageID# 194, ¶ 46[4]). While the Individual Defendants allegedly did much more than simply attend candidate Vance's speech, the Proposed Amended Complaint does not allege that they attacked Mr. Kissinger or attempted to remove him at the direction of a state actor, be it a county board of elections or any other political or governmental office. That said, none of the Individual Defendants are state actors in the eyes of the law.

2. *Johnson*

The Proposed Amended Complaint alleges that Defendants' conspiracy produced more than just the Incident. Plaintiffs also allege that Johnson began harassing and threatening them in furtherance of the conspiracy in early 2021. (ECF No. 36-1, PageID# 191, ¶ 38). Four discreet events to achieve this end are alleged: (1) Johnson and his brother taunted Plaintiffs while they protested a fundraising event for Governor Mike DeWine, calling them RINOs and shouting obscenities (*id.* at PageID# 191–92, ¶ 39); (2) Johnson responded to Ms. Kissinger's letter to the editor with his own letter to the editor and social media posts, calling her "a liar, a lunatic, a 'nut job,' an anarchist, ANTIFA, etc." (*id.* at PageID# 192, ¶ 41); (3) an unnamed Johnson associate

---

[4] The Proposed Amended Complaint explains that Senator Vance was speaking from inside the MCRP Headquarters, and that protesters remained outside near the building's entrance. Plaintiffs do not allege that MCRP Headquarters is public property.

15

harassed and shouted at Plaintiffs over a political sign they posted in front of their business (*id.* at PageID# 193, ¶ 43); and (4) after the Incident, Johnson posted photos of and messages concerning Plaintiffs, claiming that Ms. Kissinger "is a fringe lunatic nut job…a vindictive hater and proven LIAR. If she could spell anarchist, she'd be one" (*id.* at PageID# 194, ¶ 47).

There are no factual allegations in the Proposed Amended Complaint that support a finding that the Columbiana County Board of Elections or another state entity [5] directed Johnson to engage in a name-calling and intimidation campaign targeting Plaintiffs. Instead, the Proposed Amended Complaint tells the story of former friends and political allies—Johnson and Plaintiffs—whose relationship soured over time due to differences of opinion relating to Republican Party initiatives and candidates. (ECF No. 36-1, PageID# 191–94). Any member of the public can write letters to the editor, make antagonistic social media posts, and harass other members of the public about their political opinions; these activities allegedly undertaken by Johnson, however unflattering and juvenile they may have been, were not the product of an actual or apparent duty Johnson has to the Columbiana County Board of Elections, nor occasioned by the authority he has as a board member. *See Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). Since there are no facts pleaded in the Proposed Amended Complaint connecting Johnson's alleged conduct with Johnson's position at the Columbiana County Board of Elections or some other state entity, and since any member of the public could have engaged in all of the conduct that Johnson is alleged to have committed, Johnson also is not a state actor.

---

[5] In addition to his position with the Columbiana County Board of Elections, Plaintiffs allege that Johnson is an agent and/or employee of the CCRP and MCRP, the Treasurer of the Ohio Republican Party, and the State Central Committeeman for the Republican Party in the 33rd State Senate District. (ECF No. 36-1, PageID# 186–87). The analysis for determining whether other branches of the Republican Party are state actors is identical to this Court's analysis of whether MCRP is a state actor. Thus, Johnson's positions within various levels of the Republican Party are not relevant.

Absent any state action pleaded in the § 1983 claim in Plaintiffs' Complaint and the Proposed Amended Complaint, this Court lacks subject matter jurisdiction to hear this case. Because the Proposed Amended Complaint does not cure this Court's lack of subject matter jurisdiction, its filing would be futile.

### D. Defendant Johnson's Motion for Sanctions, Plaintiffs' Cross-Motion for Sanctions, and Johnson's Motion to Strike Plaintiffs' Cross-Motion for Sanctions

Consistent with the tone of the dispute between Johnson and Plaintiffs, both parties have asked the Court to award sanctions against the other for their court filings. (ECF No. 24; ECF No. 29). The district court is empowered to award sanctions for party or counsel misconduct even when it lacks subject matter jurisdiction to hear the case in which the request for sanctions is made, so long as the misconduct is collateral to the merits of the case. *Willy v. Coastal Corp.*, 503 U.S. 131, 136–37 (1992). *See Cooter & Fell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (affirming award of sanctions after the plaintiff had voluntarily dismissed the case). "[It is well established that a federal court may consider collateral issues after an action is no longer pending . . . . [An] imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Willy*, 503 U.S. at 138 (quoting *Cooter*, 496 U.S. at 395–96).

Fed. R. Civ. P. 11(b) provides that an attorney submitting a court filing to the Court represents, *inter alia*, that the filing "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P.

17

11(b)(1) and (2). Rule 11(c) provides the enforcement mechanism for Rule 11(b)'s requirements, and states that a court may impose sanctions on a party and his attorney. When a party asks the Court to sanction another party, "[t]he motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."

Rule 11(c)(1) gives the Court discretion to award sanctions, and Rule 11(c)(4) requires that any sanction the Court imposes is "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." The Sixth Circuit does not permit district courts to use Rule 11 as a "general fee-shifting device." *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 420 (6th Cir. 1992) (quoting Stephen B. Burbank, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11*, 12 (1989)). District courts are instead encouraged to consider "the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future." *Id.* (quoting Burbank, *supra*, at 40).

First, Johnson's Motion to Strike informs the Court that Plaintiffs' Cross-Motion for sanctions did not comply with the safe-harbor provision in Rule 11(c)(2). (ECF No. 31, PageID# 158). Plaintiffs did not oppose this Motion nor provide any evidence of compliance with the Rule. Johnson's Motion to Strike is therefore granted, and Plaintiffs' Cross-Motion for Sanctions is denied.

As for Johnson's Motion for Sanctions, the Court does not agree that Plaintiffs' Complaint warrants sanctions, monetary or otherwise. While this Court ultimately finds that it does not have

18

subject matter jurisdiction to hear Plaintiffs' case, it does so only after the foregoing lengthy analysis. Each of the defendants could be state actors under circumstances other than those present in this case, and the Court's analysis and conclusion does not suggest that Plaintiffs' attempt at a § 1983 claim was so wrong that they or future plaintiffs need to be deterred from filing such a pleading. Further, while the Court understands that the parties' motions and briefs likely generated significant attorney fees, this case does not present the Court with cause to depart from the American Rule, which requires parties to pay for their own lawyers. *See Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 420 (6th Cir. 1992). The Plaintiffs are individuals, presumably without deep corporate pockets, and the nature and circumstances of the conduct for which Johnson seeks sanctions simply do not warrant same.

## IV. CONCLUSION

None of Defendants are state actors for the purpose of Plaintiffs' only federal claim, which is made under 42 U.S.C. § 1983. This Court is therefore without jurisdiction to hear Plaintiffs' Complaint, and the Proposed Amended Complaint does not cure the jurisdictional deficiency present in this case. As such, Johnson's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 18), McCabe and MCRP's Motion to Dismiss under Federal Rule 12(b)(1) (ECF No. 21), and Aurandt's Motion to Dismiss under Federal Rule 12(b)(1) (ECF No. 22) are **GRANTED**. Plaintiff's Motion for Leave to Amend Complaint (ECF No. 36) is **DENIED**. McCabe, MCRP, and Aurandt's Motions to Dismiss under Federal Rule 12(b)(6) are **DENIED AS MOOT**.

Further, since Plaintiffs failed to comply with the safe-harbor portion of Rule 11, Johnson's Motion to Strike (ECF No. 31) is **GRANTED**, and Plaintiffs' Cross-Motion for Sanctions (ECF No. 29) is hereby **STRICKEN**. Finally, Johnson's Motion for Sanctions is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 16, 2023

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**